UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| VICTOR RODRIGUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-cv-02465 (APM) |
| ) | |
| FEDERAL BUREAU OF ) | |
| INVESTIGATION, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

I.

Plaintiff Victor Rodriguez filed this pro se action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the Criminal Division of the Department of Justice ("Criminal Division"), the Federal Bureau of Investigation ("FBI"), and the Office of Information Policy of the Department of Justice ("OIP"). Defendant Criminal Division renews its Motion for Summary Judgment. So, too, does the Executive Office for U.S. Attorneys ("EOUSA") because, even though it is not a named defendant, it withheld requested records. The court grants these motions, finding that the Criminal Division conducted a reasonable search, and that both the Criminal Division and EOUSA properly withheld documents and have demonstrated that non-exempt information could not be segregated.[1]

---

[1] Plaintiff's case against the FBI is not addressed here because the FBI's production efforts are ongoing. *See generally* FBI Status Report, ECF No. 49. Further, although OIP is listed as a named party, it would appear that Plaintiff named OIP as a defendant solely because it denied his administrative appeal of withholdings by the Criminal Division and did not rule on his appeal of EOUSA's withholdings. *See* Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 7–8. The Criminal Division also referred four pages to OIP for direct response to Plaintiff. *See* Defs.' Mot. for Summ. J., Decl. of Peter C. Sprung, ECF No. 23-1, ¶ 9. Plaintiff's Complaint does not, however, take issue with OIP's response to his FOIA request. *See* Compl. at 2 ("I [r]espectfully request to this court to ORDER the [FBI] to respond to my FOIA request and to ORDER the release[] of the 97 and 473 pages with[h]eld in full by the EOUSA and Criminal Division."). OIP's response, therefore, is not at issue in this case. *See* Def.'s Mot. for Summ. J., ECF No. 23, at 1 n.1.

II.

In a prior order ("the Order"), the court ruled that the Criminal Division's declaration in support of summary judgment was "not sufficiently detailed to permit the court" to find that its search was adequate. Memorandum Opinion and Order, ECF No. 31 [hereinafter Order], at 5.[2] The court found three deficiencies: (1) The Criminal Division did not explain why it forwarded a search request only to the Capital Case Section ("CCS") of the Criminal Division; (2) it did not clarify whether records were requested from the office that prosecuted Plaintiff, the U.S. Attorney's Office for the Eastern District of Pennsylvania; and (3) it did not set forth the search terms used by CCS. *Id*. at 5–6. For these reasons, the court denied Defendants' Motions for Summary Judgment without prejudice. *Id.* at 7.

On April 9, 2018, Defendant EOUSA renewed its motion for summary judgment. *See* EOUSA's Mot., ECF No. 35. Defendant Criminal Division filed its renewed motion on May 24, 2018. *See* Criminal Division's Notice of Filing, ECF No. 40 [hereinafter Defs.' Mot.]. Plaintiff filed a reply to both motions on July 26, 2018. *See* Reply, ECF No. 47 [hereinafter Pl.'s Reply].

III.

Having cured the deficiencies identified in the Order, the court now finds the Criminal Division conducted an appropriate search for responsive information.[3] An agency is entitled to summary judgment if it "show[s] beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 738 (D.C. Cir. 2017) (quoting *Morley v. CIA*, 508 F.3D 1108, 1114 (D.C. Cir. 2007)). The Criminal

---

[2] The court does not repeat the background facts of this case that were provided in its prior order. *See* Order at 2–3. EOUSA, however, has clarified one fact: it reviewed records but did not conduct a search. *See* EOUSA's Mot., ECF No. 35, at 3.
[3] The court does not read Plaintiff to have challenged the search in his Reply to Defendants' motions, *see generally* Pl.'s Reply, but it addresses the search nonetheless.

Division's declaration in support of its renewed motion meets this standard. First, the court is satisfied with the Criminal Division's decision to send the search request to CCS, as well as its decision after the Order to send a request to the Organized Crime and Gangs Section of the Criminal Division ("OCGS"). *See* Defs.' Mot., Decl. of Peter C. Sprung, ECF No. 40-1 [hereinafter Sprung Decl.], ¶¶ 7–10, 15–19. In his FOIA request, Plaintiff asked the Criminal Division for "[a]ll records maintain[ed] in your office from (Victor Rodriguez) Criminal Case (98-362-12) . . . (Eastern District of Pennsylvania) Pertaining to the (Death Pen[a]lty Case)." *Id.* ¶ 7; Order at 2. Because Plaintiff sought information about his death penalty case, the Criminal Division contacted CCS, a unit within the Division that reviews requests made by U.S. Attorney's offices to pursue the death penalty and makes recommendations to the Attorney General on whether to authorize a capital case. Sprung Decl. ¶ 9. Additionally, after the Order, the Criminal Division contacted the Assistant United States Attorney in the Eastern District of Pennsylvania who led Plaintiff's prosecution to ask whether the prosecution team had communicated with any other components of the Criminal Division, and the attorney advised that he had communicated with OCGS. *Id.* ¶ 15. The Criminal Division thereafter directed OCGS to conduct a search. *Id.* ¶ 17. In sum, Plaintiff asked the Criminal Division for documents related to his case; the Criminal Division then asked its sub-components that did work on Plaintiff's prosecution, as identified by the face of the request and the prosecutor who worked on the case, to search for such documents. These efforts satisfy the court's prior concern about why the Criminal Division sent a search request only to CCS. *See* Order at 5.

Relatedly, the court is satisfied with the Criminal Division's explanation as to why it did not ask the U.S. Attorney's Office for the Eastern District of Pennsylvania to search for responsive documents. *Id.* at 5 n.3. Plaintiff asked the Criminal Division for records "in your office"

pertaining to the capital aspect of his case. Thus, on its face, the request does not reach the prosecuting U.S. Attorney's Office, as that office is not a section within the Criminal Division's "office." Further, "the Criminal Division does not have custody or control over [local U.S. Attorney's offices'] records." Sprung Decl. ¶ 13. Plaintiff sent his request to the Criminal Division, so it was proper to limit its search to documents within its control.

Lastly, the Criminal Division has included in its present declaration a description of the search methodology and terms that were absent in the first declaration. CCS looked for relevant documents by searching Plaintiff's name in its Capital Case Tracking System, and OCGS did the same within its data system. *Id.* ¶¶ 11, 18. The searches produced a hit, indicating that the units had responsive documents in its files. *Id.* CCS then searched its files, and OCGS ordered files from storage based on the information produced by the hit. *Id.* ¶¶ 11–12, 18. The Criminal Division thus has remedied the shortcomings of its search description that led the court to initially deny summary judgment.

IV.

The court is also satisfied that both the Criminal Division and EOUSA have properly withheld documents. To begin, Defendants' *Vaughn* indexes, coupled with proffered declarations, sufficiently provide the court a reasonable basis to evaluate the asserted withholdings. *See Delaney, Midgail & Young, Chartered v. IRS*, 826 F.2d 124, 128 (D.C. Cir. 1987). Based on the court's assessment of those materials, Defendants appropriately withheld all documents based on FOIA Exemption 5. *See* Defs.' First Mot., ECF No. 23 [hereinafter Defs.' First Mot.], First Sprung Decl., ECF No. 23-1 [hereinafter First Sprung Decl.], at 12–38; *see also* Defs.' First Mot., First Jolly Decl., ECF No. 23-2 [hereinafter First Jolly Decl.], at 15–22, 27; *see also* Defs.' Mot., Revised Vaughn Index, ECF No. 40-2 [hereinafter Revised Vaughn Index], at 29–57.

Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation." 5 U.S.C. § 552(b)(5). Typically, this exemption protects documents under the deliberative process, attorney work-product, and attorney-client privileges. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). The deliberative process privilege protects documents that are "predecisional" and "deliberative." *Huntington v. United States Dep't of Commerce*, 2018 WL 4600760, at *1 (D.C. Cir. Sept. 11, 2018). The attorney work-product privilege protects attorney's work that is done in anticipation of litigation. *See Coastal States*, 617 F.2d at 864–65.

The very nature of Plaintiff's request implicates Exemption 5. Plaintiff asked the Criminal Division to disclose records pertaining to the death penalty aspect of his prosecution. The Criminal Division's role in Plaintiff's prosecution was two-fold. It reviewed the request and made a recommendation to the Attorney General about seeking the death penalty, and it evaluated and decided whether to authorize racketeering charges. To carry out those functions, the Criminal Division engaged in deliberations, both within the Division and with the local federal prosecutors, about final charging decisions. Sprung Decl. ¶¶ 8–9, 16. Nearly all the documents responsive to Plaintiff's FOIA request reflect the agency's decision-making and therefore easily fall under the deliberative process privilege.[4] Two documents—CRM-0254 and CRM-0255—are not pre-decisional material, but rather post-decisional advice from OCGS to the U.S. Attorney's Office

---

[4] The first 97 documents, which the Criminal Division withheld, deal with CCS's decision on whether to authorize the death penalty. It includes recommendations to the Attorney General from the Attorney General's Review Committee on Capital Cases, as well as recommendations from the U.S. Attorney's Office and an Assistant U.S. Attorney's notes about arguments from Plaintiff's criminal attorney. *See* First Sprung Decl. at 12–38. It also includes messages from DOJ attorneys to the U.S. Attorney's Office. *Id*. at 22. Similarly, the 473 documents referred to the EOUSA contain communications from Assistant U.S. Attorneys to Department of Justice officials, memoranda establishing Plaintiff's alleged criminal conduct, and memoranda evaluating the applicability of the death penalty. *See* First Jolly Decl. at 15–22, 27. Lastly, the OCGS documents contain communications between OCGS and Assistant U.S. attorneys about authorizing racketeering charges, a memorandum about Plaintiff's alleged criminal conduct, and drafts of superseding indictments. *See* Revised Vaughn Index at 29–57.

after OCGS's review. *See* Revised Vaughn Index at 44–45. Those documents are covered by the attorney work-product privilege because they were prepared by an OCGS attorney in anticipation of Plaintiff's prosecution. Further, after a careful reading of Plaintiff's reply, the court cannot discern any challenge that Plaintiff raises to an Exemption 5 withholding. *See generally* Pl.'s Reply. For these reasons, the court finds Exemption 5 to be a valid basis for withholding all responsive materials.

Defendants also withhold portions of the responsive records based on FOIA Exemptions 6, 7(C), 7(D), and 7(F). *See* First Sprung Decl. at 12–38; *see also* First Jolly Decl., at 15–22, 27. The court finds these withholdings are justified based on the privacy and safety considerations of those named in the records. Plaintiff has identified no public interest in the release of any of this information. The court does not decide whether Exemption 3, premised on Federal Rule of Criminal Procedure 6(e)(2)(B), is an appropriate basis to withhold documents.

V.

Finally, Defendants' declarations and supporting materials provide "reasonable specificity" to show why they could not segregate any non-exempt portions of records. *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). The court finds that any non-exempt portions of the documents are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see also* First Sprung Decl. ¶ 26; Sprung Decl. ¶ 37.

For the reasons set forth above, Defendants Criminal Division and EOUSA's Motions for Summary Judgment are granted.

Dated: December 14, 2018

Amit P. Mehta
United States District Judge